IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br>c/o Department of Justice<br>Washington, D.C. 20530,<br><br>              Plaintiff,<br><br>   v.<br><br>CALEDONIA INVESTMENTS PLC<br>Cayzer House<br>30 Buckingham Gate<br>London, UK SW1E6NN<br><br>              Defendant. | Civil Action No. |

**COMPLAINT FOR CIVIL PENALTIES FOR FAILURE TO COMPLY
WITH THE PREMERGER REPORTING AND WAITING REQUIREMENTS
OF THE HART-SCOTT RODINO ACT**

The United States of America, Plaintiff, by its attorneys, acting under the direction of the

Attorney General of the United States and at the request of the Federal Trade Commission, brings

this civil antitrust action to obtain monetary relief in the form of civil penalties against Defendant

Caledonia Investments plc ("Caledonia").  Plaintiff alleges as follows:

NATURE OF THE ACTION

1.      Caledonia violated the notice and waiting period requirements of the Hart-Scott-

Rodino Antitrust Improvements Act of 1976, 15 U.S.C. § 18a ("HSR Act" or "Act"), with

respect to the acquisition of voting securities of Bristow Group, Inc. ("Bristow") in February

2014.

1

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over the subject matter of this action pursuant to

Section 7A(g) of the Clayton Act, 15 U.S.C. § 18a(g), and pursuant to 28 U.S.C. §§ 1331,

1337(a), 1345, and 1355 and over the Defendant by virtue of Defendant's consent, in the

Stipulation relating hereto, to the maintenance of this action and entry of the Final Judgment in

this District.

3.      Venue is properly based in this District by virtue of Defendant's consent, in the

Stipulation relating hereto, to the maintenance of this action and entry of the Final Judgment in

this District.

## THE DEFENDANT

4.      Defendant Caledonia is a public limited company organized under the laws of the

United Kingdom with its principal office and place of business at Cayzer House, 30 Buckingham

Gate, London, UK SW1E6NN.  Caledonia is engaged in commerce, or in activities affecting

commerce, within the meaning of Section 1 of the Clayton Act, 15 U.S.C. § 12, and Section

7A(a)(1) of the Clayton Act, 15 U.S.C. §18a(a)(1).  At all times relevant to this complaint,

Caledonia had sales or assets in excess of $141.8 million.

## OTHER ENTITIES

5.      Bristow is a corporation organized under the laws of Delaware with its principal

place of business at 2103 City West Boulevard, Houston, TX 77042.  Bristow is engaged in

commerce, or in activities affecting commerce, within the meaning of Section 1 of the Clayton

Act, 15 U.S.C. § 12, and Section 7A(a)(1) of the Clayton Act, 15 U.S.C. §18a(a)(1).  At all times

relevant to this complaint, Bristow had sales or assets in excess of $14.2 million.  Bristow was

2

formerly named Offshore Logistics, Inc. ("Offshore Logistics").

<u>THE HART-SCOTT-RODINO ACT AND RULES</u>

6.      The HSR Act requires certain acquiring persons and certain persons whose voting

securities or assets are acquired to file notifications with the federal antitrust agencies and to

observe a waiting period before consummating certain acquisitions of voting securities or assets.

15 U.S.C. § 18a(a) and (b).  These notification and waiting period requirements apply to

acquisitions that meet the HSR Act's thresholds, which are adjusted annually.  During the period

of 2014 pertinent to this complaint, the HSR Act's reporting and waiting period requirements

applied to most transactions that would result in the acquiring person holding more than $50

million, as adjusted (at the time $70.9 million), if certain sales and asset thresholds were met, and

all transactions (regardless of the size of the acquiring or acquired persons) where the acquiring

person would hold more than $200 million, as adjusted (at the time $283.6 million), of the

acquired person's voting securities and/or assets, except for certain exempted transactions.

7.      The HSR Act's notification and waiting period are intended to give the federal

antitrust agencies prior notice of, and information about, proposed transactions.  The waiting

period is also intended to provide the federal antitrust agencies with an opportunity to investigate

a proposed transaction and to obtain effective preliminary relief to prevent the consummation of

a transaction that may violate the antitrust laws.

8.      Pursuant to Section (d)(2) of the HSR Act, 15 U.S.C. § 18a(d)(2), rules were

promulgated to carry out the purposes of the HSR Act.  16 C.F.R. §§ 801-803 ("HSR Rules").

The HSR Rules, among other things, define terms contained in the HSR Act.

9.      Pursuant to section 801.13(a)(1) of the HSR Rules, 16 C.F.R. § 801.13(a)(1), "all

3

voting securities of [an] issuer which will be held by the acquiring person after the

consummation of an acquisition" – including any held before the acquisition – are deemed held

"as a result of" the acquisition at issue.

10.     Pursuant to sections 801.13(a)(2) and 801.10(c)(1) of the HSR Rules, 16 C.F.R. §

801.13(a)(2) and. § 801.10(c)(1), the value of publicly traded voting securities already held is the

market price, defined to be the lowest closing price within 45 days prior to the subsequent

acquisition.

11.     Section 802.9 of the HSR Rules, 16 C.F.R. § 802.9, provides that acquisitions

solely for the purpose of investment are exempt from the notification and waiting period

requirements if the acquirer will hold ten percent or less of the issuer's voting securities.

12.     Section 801.1(i)(1) of the HSR Rules, 16 C.F.R. §  801.1(i)(1), defines the term

"solely for the purpose of investment" as follows:

> Voting securities are held or acquired "solely for the purpose of investment" if the person
> holding or acquiring such voting securities has no intention of participating in the
> formulation, determination, or direction of the basic business decisions of the issuer.

13.     Section 802.21(a) of the HSR Rules, 16 C.F.R. § 802.21(a), provides generally

that a person who files and observes the waiting period before crossing a filing threshold may,

within five years of the expiration of the waiting period, acquire additional voting securities of

the issuer that do not cross a higher threshold, so long as the person does not acquire control of

the issuer.  For example, a person who files and observes the waiting period before crossing the

$50 million threshold, as adjusted, may, assuming the person does not acquire control, acquire

additional voting securities of the issuer up to the next threshold, which is $100 million, as

adjusted.  The acquiring person must file again, however, before it can cross the next higher

4

threshold, $500 million, as adjusted, or before the person acquires control of the issuer.

14.     Section 7A(g)(1) of the Clayton Act, 15 U.S.C. § 18a(g)(1), provides that any person, or any officer, director, or partner thereof, who fails to comply with any provision of the HSR Act is liable to the United States for a maximum civil penalty of $10,000 for each day during which such person is in violation.  Pursuant to the Debt Collection Improvement Act of 1996, Pub. L. 104-134, § 31001(s) (amending the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461 note), and Federal Trade Commission Rule 1.98, 16 C.F.R. § 1.98, 74 Fed. Reg. 857 (Jan. 9, 2009), the maximum amount of civil penalty was increased to $16,000 per day.  Pursuant to the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, Pub. L. 114-74, § 701 (further amending the Federal Civil Penalties Inflation Adjustment Act of 1990), and Federal Trade Commission Rule 1.98, 16 C.F.R. § 1.98, 81 Fed. Reg. 42,476 (June 30, 2016), the maximum amount of civil penalty was increased to $40,000 per day.

## DEFENDANT'S PRIOR VIOLATION OF THE HSR ACT

15.     On December 19, 1996, Caledonia acquired 1,300,000 shares of voting securities of Offshore Logistics in a transaction negotiated with Offshore Logistics.  As a result of that transaction, Caledonia held approximately six percent of the voting securities of Offshore Logistics, valued at approximately $19.8 million.  The transaction gave Caledonia the right to appoint two people to the board of Offshore Logistics.  Shortly after December 19, 1996, Caledonia named two of its employees to the board of Offshore Logistics.

16.     At the time of the December 19, 1996, transaction, the relevant size of the transaction was $15 million.

17.     Caledonia could not rely on the exemption for acquisitions solely for the purpose of investment because it intended to, and did, exercise its rights to appoint two members to Offshore Logistics' board of directors.

18.     Although it was required to do so, Caledonia did not file under the HSR Act prior to acquiring Offshore Logistics voting securities on December 19, 1996.

19.     On June 3, 1997, Caledonia made a corrective filing under the HSR Act for the December 19, 1996, acquisition of Offshore Logistics voting securities. In a letter accompanying the corrective filing, Caledonia acknowledged that the transaction was reportable under the HSR Act, but asserted that the failure to file and observe the waiting period was inadvertent. The United States and the Federal Trade Commission did not initiate an enforcement action against Caledonia for this violation of the Act.

## VIOLATION

20.     On June 5, 2008, Caledonia filed to acquire voting securities of Bristow valued in excess of $50 million, as adjusted. The waiting period on this filing expired on June 13, 2008.

21.     Pursuant to Section 802.21(a) of the HSR Rules, 16 C.F.R. § 802.21(a), Caledonia could acquire additional voting securities of Bristow without filing under HSR for a period of five years, as long as its holdings did not exceed the $100 million threshold, as adjusted ($141.8 million as of February 3, 2014). That five-year period ended on June 13, 2013.

22.     On February 3, 2014, Caledonia acquired 3,650 shares of Bristow voting securities as the result of vesting of restricted stock units. Because this acquisition occurred later than five years after the expiration of the waiting period of the previous filing, the HSR Rules required Caledonia to again file a notice prior to crossing the $50 million threshold, as adjusted

6

($70.9 million as of February 3, 2014). The voting securities that Caledonia held as a result of this acquisition from Bristow were valued at approximately $111 million.

23.     Although it was required to do so, Caledonia did not file under the HSR Act prior to acquiring Bristow voting securities on February 3, 2014.

24.     More than a year later, on February 4, 2015, Caledonia made a corrective filing under the HSR Act for the Bristow voting securities it had acquired on February 3, 2014. The HSR waiting period expired on March 6, 2015.

25.     Caledonia was in continuous violation of the HSR Act from February 3, 2014, when it acquired the Bristow voting securities that resulted in it holding Bristow voting securities valued in excess of the HSR Act's $50 million size-of-transaction threshold, as adjusted, through March 6, 2015, when the waiting period expired.

REQUEST FOR RELIEF

WHEREFORE, Plaintiff requests:

a.     That the Court adjudge and decree that Defendant Caledonia's acquisition of Bristow voting securities on February 3, 2014, was a violation of the HSR Act, 15 U.S.C. § 18a; and that Defendant Caledonia was in violation of the HSR Act each day from February 3, 2014, through March 6, 2015.

b.     That the Court order Defendant Caledonia to pay to the United States an appropriate civil penalty as provided by the HSR Act. 15 U.S.C. § 18a(g)(1), the Debt Collection Improvement Act of 1996, Pub. L. 104-134, § 31001(s) (amending the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461 note), and Federal Trade Commission Rule 1.98, 16 C.F.R. § 1.98, 74 Fed. Reg. 857 (Jan. 9, 2009), and the Federal Civil Penalties Inflation

7

Adjustment Act Improvements Act of 2015, Pub. L. 114-74, § 701 (further amending the Federal

Civil Penalties Inflation Adjustment Act of 1990), and Federal Trade Commission Rule 1.98, 16

C.F.R. 1.98, 81 Fed. Reg. 42,476 (June 30, 2016).

      c.      That the Court order such other and further relief as the Court may deem just and

proper.

      d.      That the Court award the Plaintiff its costs of this suit.

Dated:  8/10/16

FOR THE PLAINTIFF UNITED STATES
OF AMERICA:

Renata B. Hesse
D.C. Bar No. 466107
Acting Assistant Attorney General
Department of Justice
Antitrust Division
Washington, D.C. 20530

Daniel P. Ducore
D.C. Bar No. 933721
Special Attorney

Roberta S. Baruch
D.C. Bar No. 269266
Special Attorney

Kenneth A. Libby
Special Attorney

Jennifer Lee
Special Attorney

Federal Trade Commission
Washington, D.C. 20580
(202) 326-2694

9